# Stephen A. Katz, P.C.
## Attorney at Law

111 JOHN STREET, SUITE 800
NEW YORK, NY 10038-3180
(212) 349-6400  FAX: (646) 308-1170
1-(800) 251-3529
sakatz00@aol.com

21 November 2011

*Stephen A. Katz* (MA, NY & PA)

Hon. Roslynn R. Mauskopf
U. S. District Court
Eastern District of New York
225 Cadman Plaza East, Room 1223
Brooklyn, New York 11201

Re: Kahraman v. Countrywide Home Loans, Inc., E.D.N.Y. no. 09-CIV-2970 (RRM) (RML)

Dear Judge Mauskopf:

In response to the Court's denial of my request to submit a fifty-one-page memorandum opposing Countrywide's motion for summary judgment, this letter presents a fuller explanation of the reasons for the request in hope that the Court will reconsider its decision.

## 1. The Kahramans' Truth-in-Lending Act (TILA) Claim

Countrywide challenges *(a)* the Kahramans' claim under TILA that the Kahramans were not given two copies of a notice of the three-day right to cancel their loan, and it challenges *(b)* the claim that Countrywide used the wrong model form to give the Kahramans notice of the right to cancel.

The Kahramans request extra space for their memorandum in order to explain how the TILA statute, and three cases, counsel denying summary judgment regarding the Kahramans' claim that they did not receive two copies apiece of a notice of the right to cancel. That statutory and decisional authority give the Kahramans the right to repudiate the statement that the Kahramans signed at their loan's closing acknowledging that they each received two copies of a notice of the right to cancel. The Kahramans' proposed fifty-one-page memorandum explains the facts of the three cases that the Kahramans rely on in this part of their memorandum.

Regarding the lender's using the wrong model form to notify the Kahramans of the right to cancel, the Kahramans present the complete text of the form that Countrywide actually used to give the Kahramans notice, as well as the text of the form that it *should* have used. The Kahramans then show how the forms' texts differ so that Countrywide misinformed the Kahramans about the amount of their $424,000 loan that they were entitled to rescind. Specifically, because Countrywide used the wrong model form, it told the Kahramans that they could rescind all of their $424,000 Countrywide mortgage loan; but in fact, the Kahramans were entitled to rescind only $82,317.56 of the $424,000 loan, and the correct model form would have told the Kahramans that.

---

The Kahramans utilize twenty-three pages to present their arguments and supporting authority concerning TILA.

### 2. The Deceptive Practices Act Claim

In this section of the Kahramans' proposed fifty-one-page memorandum, the Kahramans *(a)* refute the lender's statute-of-limitations defense; *(b)* show that Countrywide's misconduct was consumer-oriented by referring to cases charging predatory lending that attorneys general and others have brought against Countrywide in various states; *(c)* explain why Countrywide's misconduct *was* deceptive; and *(d)* describe six cases that have allowed borrowers to sue mortgage lenders under New York's Deceptive Practices Act. Regarding this section as with most topics in Countrywide's summary-judgment motion, it is easy for Countrywide to make its arguments, such as that the statute of limitations has run or that Countrywide's actions were not deceptive because a borrower knows what her own income is—those arguments require a few sentences. But a fully developed refutation of the arguments runs to many pages.

### 3. The fraud claim

This section of the Kahramans' proposed memorandum is shorter than the first two but still requires six pages. There the Kahramans *(a)* refer to a proposed second amended complaint that they seek to file, and explain how a lender's approving a borrower for a loan can constitute a false statement—which the borrower can rely on—that the borrower can afford the loan; the Kahramans also *(b)* describe applicable caselaw, and *(c)* explain how they have been damaged by Countrywide's fraud.

### 4. The Credit Repair Organizations Act (CROA) claim

In this section of the proposed memorandum the Kahramans explain how Countrywide, which is not a credit-repair organization, nonetheless comes under CROA. The borrowers describe the case *Poskin v. TD Banknorth, N.A.*[1] in detail to support their argument, and also explain why Countrywide's false statement of Mr. Kahraman's income was not just a statement that Countrywide made to itself, but was also a statement that was intended to be read by a prospective buyer of Countrywide's $424,000 loan to the Kahramans. Again, it takes a sentence or two for Countrywide to criticize the Kahramans' CROA claim because it supposedly involves Countrywide's lying to itself, but it takes several pages to refute the criticism.

Finally, your Honor, I would like to say from personal experience that in cases like this one, a longer memorandum has been much more effective than a shorter one. In *Hutter v. Countrywide Bank, N.A.*, S.D.N.Y. no. 09-CV-10092 (CS) (LMS) and *Karakus v Wells Fargo Bank, N.A.*, E.D.N.Y. no. 09-CV-04739 (ENV) (SMG), I submitted legal memoranda of fifty pages, and the Courts wholly or partially denied a motion to dismiss. But in *Hayrioglu v. Granite Capital Funding, LLC*, E.D.N.Y. no. 10-cv-3126 (ADS) (AKT), I submitted a twenty-

---

[1] 687 F. Supp. 2d 530 (W.D. Pa. 2009) (mem.).

five-page memorandum, and the Court granted a motion to dismiss. Thus, it appears that in predatory-lending cases, borrowers' arguments need to be presented in detail in order for them to be effective. The Kahramans respectfully ask, therefore, that the Court allow them to present their complete arguments in opposition to Countrywide's summary-judgment motion, by granting Mr. and Mrs. Kahraman the right to submit a fifty-one-page legal memorandum.

Thank you for reconsidering the Court's decision in this matter.

Sincerely yours,

Stephen A. Katz

SAK
[I]