UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SERVET KAHRAMAN and FATMA
KAHRAMAN,

                         **MEMORANDUM AND ORDER**

               Plaintiffs,                 09-CV-2970 (RRM) (RML)

      - against -

COUNTRYWIDE HOME LOANS, INC.,

               Defendant.
----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiffs Servet and Fatma Kahraman have sued their mortgage lender, defendant Countrywide Home Loans, Inc. ("Countrywide"), in connection with a home mortgage refinancing. The Kahramans have asserted federal, state, and common-law claims against Countrywide for failing to make required disclosures and for misrepresenting their income during the loan application process. They seek rescission of the refinanced loan, statutory and actual damages, and fees. Currently before the Court are Countrywide's motion for Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and a request by the Kahramans to amend their complaint. For the reasons stated below, Countrywide's motion for summary judgment is granted as to all federal claims, which are dismissed with prejudice, the Kahramans' state and common-law claims are dismissed based on the Court's decision to decline supplemental jurisdiction, rendering moot the Kahramans' request to amend their complaint for a second time to amplify their state law claims.

1

**BACKGROUND**

**I. Factual Background**

In July of 2006, the Kahramans refinanced their Countrywide mortgage loan. (Pls.' 56.1 Stmt. (Doc. No. 31) at 1; Pls.' Mem. Opp. (Doc. No. 34) at 5.) While the original principal amount of their mortgage loan was $424,000, at refinancing the payoff figure was $341,682.44. (Pls.' 56.1 Stmt. at 1; Pls.' Mem. Opp. at 5.) Countrywide extended the Kahramans a new loan (the "Loan") in the original amount of $424,000, secured by their residence. (Pls.' 56.1 Stmt. at 1–2.) The Loan was used in part to pay the balance of their previous mortgage loan. (Pls.' Mem. Opp. at 5.)

At the closing on July 15, 2006, the Kahramans signed a loan application indicating that Servet Kahraman's monthly income was $8,000. (Pls.' 56.1 Stmt. at 2.) The Kahramans allege— and Countrywide has not squarely denied—that an earlier loan application signed on July 5, 2006 did not contain the $8,000 figure, and that Countrywide added the figure without their knowledge or consent prior to closing. (*Id.* at 2–3; *see* Def.'s Reply Mem. Law Supp. (Doc. No. 35) at 7–8.) At closing, the Kahramans each signed a "Notice of Right to Cancel" form, each acknowledging receipt of two copies of the Notice and one copy of a "Federal Truth in Lending Disclosure Statement." (Pls.' 56.1 Stmt. at 2; Bjurstrom Dec. Ex. C (Doc 29-16) (Notice of Right to Cancel); *see also* Bjurstrom Dec. Ex. G (Doc No. 29-20) (Truth in Lending Disclosure Statement).) The Kahramans now allege that they only received one copy of the "Notice of Right to Cancel." (Pls.' 56.1 Stmt. at 5.)

In 2008, Servet Kahraman's income decreased, and the Kahramans subsequently defaulted on the Loan. (*Id.* at 3.) The Kahramans attempted to obtain a loan modification, but

2

were unsuccessful. (*Id.* at 4.) They then sent Countrywide a notice of rescission on or about July 8, 2009, just one week prior to the third anniversary of the closing. (*Id.*)

**II. Procedural Background**

On July 10, 2009, the Kahramans commenced this action, seeking to rescind their mortgage loan under the federal Truth in Lending Act ("TILA"), based on Countrywide's alleged failure to provide each plaintiff with two copies of the Notice of Right to Cancel. (Compl. (Doc. No. 1).) On April 30, 2010, plaintiffs amended their complaint to include: an additional TILA rescission claim based on Countrywide's failure to use the proper form for the Notice of Right to Cancel; a claim under the Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679–79j (2006); a claim under New York's Deceptive Practices Act, N.Y. Gen. Bus. Law § 349; and a claim for common law fraud. (Am. Comp. (Doc. No. 11).)

Countrywide has now moved for summary judgment on all of the Kahramans' claims. (*See* Def.'s Mem. Law Suppt. (Doc. No. 30).) The Kahramans have opposed the motion, and have also asked for leave to amend their complaint for a second time. (Pls.' Mem. Opp.; Pls.' Letter of Dec. 11, 2011 (Doc. No. 28).) Countrywide has replied in support of its motion, and has opposed the Kahramans' request for leave to amend. (Def.'s Reply Mem. Law Suppt. ; Def.'s Letter of Dec. 15, 2011 (Doc. No. 36).)

## DISCUSSION

**I. Summary Judgment Standard of Review**

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the

3

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a district court must draw all reasonable inferences in favor of the nonmoving party. *See id.* at 249 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). The court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)).

Once a movant has demonstrated that no genuine issue of material fact exists, then "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). There must exist more than mere "metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id.* at 586. The non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law" will properly preclude the entry of summary judgment. *Id.* at 248; *see also Matsushita*, 475 U.S. at 586.

II. Plaintiffs' TILA Claim

1. TILA Framework

TILA was enacted by Congress "to assure a meaningful disclosure of credit terms" to consumers. *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 421 (S.D.N.Y. 2010) (citing 15 U.S.C. § 1601; *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980)). Congress has specifically designated the Federal Reserve Board as the primary source for interpretation and application of TILA. *Id.* (citing *Milhollin*, 444 U.S. at 566).

Under TILA, as interpreted by the Board, consumers entering certain credit transactions involving security interests in their principal dwelling have a right to rescind the transaction until midnight on the third business day after the credit transaction, delivery of the rescission notice, or delivery of all material disclosures, whichever is latest. *Id.* (citing 15 U.S.C. § 1635(a)). If a borrower does not receive certain disclosures, the right to rescind the transaction extends for three years. *Id.* at 421–22; 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). The three year extension is triggered if a creditor does not "clearly and conspicuously disclose" the security interest in the principal dwelling, the right to rescind, how to exercise rescission (with a form to exercise rescission designating the creditor's address), the effects of rescission, and the expiration date of rescission. *Barberan*, 706 F. Supp. 2d at 421 (citing 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(1)). The creditor must also make all "material disclosures," which include "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, [and] the payment schedule . . . ." 12 C.F.R. § 226.23(a)(3) & n.48.

**2. Analysis**

**i. Rescission amount limit**

As an initial matter, the Kahramans' complaint seeks more rescission rights than TILA would entitle them to. The Kahramans' amended complaint asks this Court to "rescind under TILA *the $424,000 mortgage and loan* that the Kahramans received from Countrywide Home Loans, Inc., and terminate *any security interest* that Countrywide has in the Kahramans' Wantagh, New York home." (Am. Comp. (emphasis added).) But all of plaintiffs' allegations concern their July 15, 2006 refinancing transaction, and not their original home loan, which was made years earlier, by an entity eventually owned by Countrywide at the time of refinancing (*See id.* at 2.) On the day that the Kahramans refinanced their mortgage, they owed Countrywide $341,682.44 on that original loan. (*Id.*; Pls.' Mem. Opp. at 5.)

> Under the Federal Reserve Board's implementation of TILA,
>
> [t]he right to rescind does not apply to . . . a refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling [except] to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation."

12 C.F.R. § 226.23(f)(2). The plaintiffs' opposition papers acknowledge this limitation.

> When the lender who refinances a mortgage loan is the same lender as the one who also made the previous loan that the borrowed is refinancing, *the borrower's three-day right to cancel only gives her the right to cancel the amount of* new *credit that exceeds the balance on her previous loan*. She cannot cancel her entire new loan. . . . That means that during the three days after the Kahramans closed on [the Loan], they were only entitled to cancel . . . $82,317.56 of the $424,000 loan, because $341,682.44 was the remaining balance on their previous Countrywide loan . . . .

(Pls.' Mem. Opp. at 5–6 (emphasis in original) (citing 12 C.F.R. § 226.23(f)(2)).) While the Kahramans allege that Countrywide's Right to Cancel Notice ambiguously suggests that they can

6

cancel their entire loan, they refer to this interpretation, the same one still set forth in their amended complaint, as "erroneous[]" and "false[]." (*Id.* at 6.)

Section 226.23(f)(2) clearly governs plaintiffs' rescission rights under TILA, and plaintiffs have presented no legal argument why they are otherwise entitled to rescission of their entire loan, or to a complete release of Countrywide's security interest, which predated their refinancing. Accordingly, the Kahramans' TILA rescission claim must be limited only to that portion of their refinancing loan which exceeds the sum of (1) the unpaid principal balance on their original loan, (2) any earned unpaid finance charge on the existing debt, and (3) amounts attributed solely to the costs of the refinancing or consolidation.[1] In any event, for the reasons below, the Court finds their TILA claim untimely.

### ii. Timeliness of the Rescission Claim

The Kahramans brought the instant suit long after the three-day rescission period set forth at 15 U.S.C. § 1635(a). They argue, however, that they are entitled to an extended three-year period for rescission, due to two errors allegedly made by Countrywide at closing. *See* 12 C.F.R. § 226.23(a)(3). First, they allege that Countrywide failed to provide them each with two copies of the notice of their right to rescind the transaction ("NRR"). (Am. Compl. ¶ 24a); *see* 12 C.F.R. § 226.23(b)(1) ("In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind . . . ."). Second, they allege that Countrywide used the wrong form for their NRR, thereby failing to "clearly and conspicuously" inform them of their rescission rights and the effects thereof. (Am. Compl. ¶ 24b); *see* 15 U.S.C.

---

[1] Further, although plaintiffs' "Request for Damages" paragraph includes a claim for statutory damages under TILA, Countrywide's motion for summary judgment as to this demand is GRANTED. Plaintiffs filed this action far outside TILA's one-year statute of limitations for statutory damages. *See* 15 U.S.C. § 1640(e). This statute of limitations is separate from the three-year statute applicable to violations of the disclosure requirements in § 1639. *Id.*

7

§ 1635(a). As explained below, neither error entitles the Kahramans to the extended rescission period. Accordingly, their TILA rescission claim is untimely.

### a. Failure to provide two copies of the NRR

The Kahramans allege that Countrywide failed to provide them with two copies each of the NRR. At closing, the Kahramans signed a statement at the bottom of their Notice of Right to Cancel, indicating that they "each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement." (Bjurstrom Dec. Ex. C.) They nevertheless allege that they together received only one copy of the NRR.[2] (Aff. Servet Kahraman Opp. ¶9–13; *see* Pls.' 56.1 Stmt. at 5.) While their signatures create a rebuttable presumption of full delivery, *see* 15 U.S.C. § 1635(c), the parties disagree about whether Servet Kahramans' affidavit testimony is sufficient to rebut the presumption and avoid summary judgment. However, the Court need not reach this issue.[3]

While the Second Circuit has never squarely addressed whether failure to provide extra copies of an NRR entitles a consumer to an extended rescission period, it has held that "perfect disclosure" is not required under TILA, *Gambardella v. G. Fox & Co.*, 716 F.2d 104, 118 (2d Cir. 1983), and that TILA's "purpose is to require 'meaningful disclosure,' not 'more disclosure.'" *Turner v. General Motors Acceptance Corp.*, 180 F.3d 451, 457 (2d Cir. 1999)

---

[2] This allegation distinguishes the instant case from cases like *Iannuzzi v. Am. Mortg. Network, Inc.*, 727 F. Supp. 2d 125 (E.D.N.Y. 2010), in which the court denied summary judgment to mortgagee defendants where plaintiff mortgagors conceded that they signed a written acknowledgement at closing, but stated in sworn affidavits that they received *no* copies of the required TILA disclosure forms. *Id*. at 135.

[3] As the court recognized in *Iannuzzi*, district courts applying the rebuttable presumption of 15 U.S.C. § 1635(c) have disagreed as to whether sworn statements by borrowers asserting that they did not receive the requisite copies of their notice of right to rescind, despite signed acknowledgments to the contrary, are sufficient to preclude summary judgment. 727 F. Supp. 2d at 136 & n.14.

(quoting *Milhollin*, 444 U.S. at 568).[4] Under similar interpretations of TILA, other courts have held that merely receiving one copy of the NRR instead of two (or more) should not extend a consumer's right of rescission to three years under 12 C.F.R. § 226.23(a)(3).[5] *See, e.g.*, *Martenson v. RG Financing*, No. 09–cv–1314, 2010 WL 334648, at *10 (D. Ariz. Jan. 22, 2010) (finding plaintiff not likely to succeed on the merits of a rescission claim under TILA, because, *inter alia*, plaintiff "does not allege that receiving only one copy [of her NRR] prevented her from exercising her right to cancel or that she would have exercised the right if she had received two copies"); *Henderson v. GMAC Mortg. Corp.*, No. C05-5781RBL, 2008 WL 1733265, at *6 n.5 (W.D. Wash. Apr. 10, 2008) (finding "simply no support [under TILA] for the claim that a technical failure to provide multiple copies of a document excuses a borrower from his end of the bargain"); *see also Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815 (4th Cir. 2007) (declining to address "hyper-technical" violations of TILA, and stating in dicta that lender "substantially complied" when it delivered one copy of an NRR instead of four).

---

[4] This Court recognizes, but declines to follow, those other courts that have applied a "strict liability standard," to TILA, such that "even minor or technical violations" impose rescission liability on the creditor. *Siver v. CitiMortgage, Inc.*, 830 F. Supp. 2d 1194, 1197 (W.D. Wash. 2011). These courts elsewhere, have found the rescission period extendable to three years simply for failing to provide two copies each of an NRR. *See, e.g., Smith v. Argent Mortg. Co.*, 331 Fed. Appx. 549, 557 (10th Cir. 2009); *Sibby v. Ownit Mortg. Solutions, Inc.*, 240 Fed. Appx. 713, 715 (6th Cir. 2007); *Marr v. Bank of America, N.A.,* No. 10–C–0658, 2012 WL 781706, at *3 (E.D. Wis. Mar. 07, 2012); *DeCosta v. U.S. Bancorp*, No. DKC 10–0301, 2010 WL 3824224, at *4 (D. Md. Sep. 27, 2010); *Davison v. Bank One Home Loan Servs.*, No. 01–2511–KHV, 2003 WL 124542, at *4 (D. Kan. Jan 13, 2003); *Cooper v. First Gov't Mortg. & Investors Corp.*, 238 F. Supp. 2d 50, 64 (D.D.C. 2002); *c.f. Aubin v. Residential Funding Co., LLC*, 565 F. Supp. 2d 392, 397 n.3 (D. Conn. 2008) (declining to "wade into the apparent conflict among circuits regarding whether technical errors are sufficient to trigger the three-year rescissory period." (collecting cases)).

[5] In addition, some courts have questioned whether the language of the Federal Reserve Board's regulations even authorizes an extended rescission period for this particular violation. *See King v. Long Beach Mortg. Co.*, 672 F. Supp. 2d 238, 250–51 (D. Mass. 2009) ("By deliberately choosing to use the singular form "notice" instead of the plural form 'notices' or 'two copies of the notice,' the Federal Reserve Board intended that delivery of a single copy of the Notice would not trigger an extension of the rescission right."); *accord McKenna v. Wells Fargo Bank, N.A.*, No. 10–10417–JLT, 2011 WL 1100160 (D. Mass. Mar. 21, 2011); *Kassner v. Chase Home Finance, LLC*, No. 11–10643–RWZ, 2012 WL 260392 (D. Mass. Jan 27, 2012).

Finding these principles persuasive, and viewing the facts in the light most favorable to plaintiffs, the Kahramans are not entitled to an extended rescission period as they received "meaningful disclosure." Even assuming that the Kahramans could properly rebut their written acknowledgement that at closing they received four copies of the NRR, there is no dispute that they received at least one NRR, and that the NRR accurately disclosed plaintiffs' rights under TILA, including their right of rescission. Moreover, the Kahramans have not shown that their rights were in any way affected by receiving only one copy. *See Yarney v. Wells Fargo Bank, N.A.*, No. 3:09–CV–00050, 2010 WL 3075460, at *9 (W.D. Va. Aug. 5, 2010) (dismissing under 12(b)(6) TILA rescission claims where plaintiff "ha[d] not alleged that she did not receive actual notice of the right to rescind," nor that she was harmed by receiving only one NRR). Indeed, Servet Kahraman has stated at deposition that he has no desire to actually cancel his loan with Countrywide (Sims Dec. Ex. 6 (Servet Kahraman Tr.) at 81:13–16), and both Servet and Fatma Kahraman have confirmed that their ultimate objective is to use the threat of rescission to obtain a modification of a loan they freely entered into. (*Id.* at 80:3–6; Sims Dec. Ex. 7 (Fatma Kahraman Tr.) at 33:9–13.)

### b. Use of an improper form for the NRR

As an alternative ground for extending the rescission period, the Kahramans argue that Countrywide used the wrong form to disclose their rescission rights. Countrywide notified the Kahramans of their right to cancel their refinancing transaction on a form patterned on Federal Reserve Board Model Form H-8, 12 C.F.R. § 226.23 app. H-8, which is designed for general transactions. *See Santos-Rodriguez v. Doral Mortg. Corp.*, 485 F.3d 12, 15 (1st Cir. 2007). The Kahramans argue that Countrywide should have used a form patterned on Form H-9, 12 C.F.R. § 226.23 app. H-9, which is designed for same-lender refinancing transactions. *See Santor-*

10

*Rodriguez*, 485 F.3d at 15. They submit that Countrywide, by using the improper form, failed to provide clear notice of their right to rescind the refinancing loan. (Am. Comp. ¶¶ 24–25.)

Title 15, United States Code, § 1635(h) does not require use of a particular form to inform consumers of their rescission rights, but instead authorizes the use of "the appropriate form of written notice published and adopted by the [Federal Reserve Board], *or a comparable written notice . . . .*" (emphasis added). Likewise, the Federal Reserve Board's regulations permit a creditor to "provide the appropriate model form in Appendix H . . . *or a substantially similar notice.*" 12 C.F.R. § 226.23(b)(2) (emphasis added). Accordingly, merely using a form modeled after form H-8 rather than form H-9 for a refinancing transaction would not entitle a mortgagor to rescission unless the form failed to "clearly and conspicuously" inform the mortgagor of his rescission rights and the effects thereof. *Santos-Rodriguez*, 485 F.3d at 17.

A refinance lender who uses forms modeled on form H-8 rather than H-9 can still meet its disclosure obligations under TILA and its regulations. *Id.* The H-8-based form must explain that the mortgagors are entering a transaction that would result in a mortgage on their home; that they have a legal right to rescind the transaction without cost within three days; and that, if they rescind the transaction, the mortgage created by the refinancing transaction will also be cancelled. *See id.* The form must also satisfy the requirements of 12 C.F.R. § 226.23(d) by sufficiently informing the mortgagors of certain effects of rescission. *See Santos-Rodriguez*, 485 F.3d at 17. A refinancer's use of a form meeting these requirements, even if not based on form H-9, will not trigger the three year extended rescission period. *Id.*; *accord Stallman v. Countrywide Home Loans, Inc.*, No. 1:10 CV 1006, 2011 WL 400103, at *5 (N.D. Ohio Feb. 1, 2011). [6]

---

[6] Again, courts that impose a strict liability interpretation of TILA's disclosure requirements have reached a different result on similar issues. *See, e.g., Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) (finding

11

Here, Countrywide's H-8 based form provided the required information. (*See* Bjurstrom Dec. Ex. C.) Plaintiffs argue that Countrywide's form is nevertheless fatally ambiguous under TILA because the term "this transaction" could be read to imply a right to rescind their entire $424,000 loan, while in fact, as discussed *supra*, a refinancing homeowner is only entitled to rescind the amount of their new loan that exceeds the balance of their original mortgage loan. (Pls.' Mem. Opp. at 6–7.) Plaintiffs argue that *Santos-Rodriguez* "ignores [this] critical ambiguity" in the H-8 form when used in the refinancing context. (*Id.* at 7.) In fact, the *Santos-Rodriguez* court addressed and properly dismissed this very interpretation, finding that the H-8 form informed the plaintiffs "clearly and conspicuously" that "rescission would only operate as to their pending refinance transaction," and thus that "any conclusions . . . they might have drawn from that disclosure about their previously existing mortgages were unreasonable (and, thus, not the valid basis for any TILA claim)." 485 F.3d at 18 (citing *Gambardella*, 716 F.2d at 118). This Court agrees, as the average refinancing borrower would understand rescission of a refinancing "transaction" to return them to the *status quo ante* of their outstanding mortgage, and not to grant them a windfall by cancelling their entire mortgage. *See Veale v. Citibank*, 85 F.3d 577, 580 (11th Cir. 1996) ("We hold that . . . the H-8 form provides sufficient notice that the current transaction may be cancelled but that previous transactions, including previous mortgages, may not be rescinded."); *see also Joy Iroanyah v. Bank of America, N.A.*, 2012 WL 874329, at *5 (N.D. Ill. Mar. 14, 2012) ("Rescission unwinds the rescinded transaction, with

---

three-year rescission period available where new mortgagee erroneously gave mortgagor both an H-8 and H-9 form, and noting that "TILA does not easily forgive 'technical' errors.") However, as noted above, the Second Circuit has refused to grant statutory damages under TILA for technical inaccuracies unlikely to mislead consumers. *Gambardella*, 716 F.2d 117–18. This accords with other circuits' holdings that TILA's standards are "less demanding than a requirement of perfect notice." *Santos-Rodriguez*, 485 F.3d at 16n.6 & 17 (citing *Veale*, 85 F.3d at 581 (11th Cir. 1996); *Smith v. Chapman*, 614 F.2d 968, 972 (5th Cir. 1980)). It also accords with Congress's 1995 amendments to TILA, which were intended to provide "higher tolerance levels for . . . honest mistakes in carrying out disclosure obligations." *See id.* at 17.

each side returning whatever it received from the other to restore the status quo ante.") Accordingly, because Countrywide's form provided sufficient notice of the Kahramans' rescission rights, it too cannot serve as grounds to extend their rescission period.

Because the Kahramans were only entitled to a three-day rescission period, their TILA rescission claim is untimely, and Countrywide's motion for summary judgment as to this claim is granted.[7]

**III. Plaintiffs' Credit Repair Organizations Act Claim**

In their amended complaint, the Kahramans have added a claim that Countrywide violated the Credit Repair Organization Act, 15 U.S.C. §§ 1679–79j ("CROA"). They allege that Countrywide altered their loan application to make Servet Kahraman's gross monthly income appear greater than it was, thereby falsely representing their creditworthiness in the loan application process. Even assuming this to be true, the Kahramans would not be entitled to relief.

---

[7] Even if the Kahramans could show mistakes by Countrywide entitling them to an extended rescission period, equitable considerations would counsel against permitting them to rescind their loan. TILA's requirements are to be "reasonably construed and equitably applied." *Shelton*, 486 F.3d at 819 n.4; *Aubin*, 565 F. Supp. 2d at 397 (citing *Shelton*). "Although TILA statutorily grants the right to rescind, rescission nevertheless remains an equitable remedy." *Duren v. First Gov't Mortg. & Investors Corp.*, 221 F.3d 195 (D.C. Cir. 2000) (table). As such, rescission under TILA is subject to the same concerns attendant to rescission at common law. *See Rosenfield v. HSBC Bank, USA*, No. 10–1442, --- F.3d ----, 2012 WL 2087193, at *8–9 (10th Cir. June 11, 2012). Accordingly, a court may decline enforcement where doing so would "deprive the lender of his legal due," or result in "stark inequity" to the lender. *See Byron v. EMC Mortg. Corp.*, No. 3:09–cv–197, 2009 WL 2486816 (E.D. Va. Aug. 10, 2009) (quoting *Powers v. Sims*, 542 F.2d 1216, 1222 (4th Cir. 1976)). In this case, the Kahramans have never alleged that they were damaged by Countrywide's minor alleged oversights, or that Countrywide failed to notify them of their right to rescind the transaction. Balancing the interest of Countrywide—to enforce a contract into which all parties entered freely—against the clear intent of the Kahramans as discussed above—to use technical violations under TILA to force a modification of that contract's terms— rescission would be an inequitable remedy. *See Byron*, 2009 WL 2486816, at *4 (denying rescission where plaintiff borrower would receive an "unconscionable windfall" if permitted to rescind for the "technical error" that she received only one copy of an NRR); *see also* Yarney, 2010 WL 3075460, at *9 (W.D. Va. Aug. 5, 2010) (dismissing rescission claims under TILA where plaintiff "ha[d] not alleged that she did not receive actual notice of the right to rescind," nor that she was harmed by receiving only one NRR).

The stated purposes of CROA are:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and
>
> (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679(b). Under CROA, "[n]o person may . . . make any statement . . . which is untrue or misleading . . . with respect to any consumer's credit worthiness, credit standing, or credit capacity to . . . any person . . . to whom the consumer has applied or is applying for an extension of credit . . . ." § 1679b(a)(1). A violation of CROA entitles a plaintiff to damages in the amount of "any actual damage sustained by such person . . . [or] any amount paid by the person to the credit repair organization," § 1679g(a)(1), and under certain conditions, punitive damages, § 1679g(a)(2).

As an initial matter, federal district courts disagree as to whether § 1679b generally applies to mere lending institutions such as Countrywide. *See Hayrioglu v. Granite Capital Funding, LLC*, 794 F. Supp. 2d 405, 414 (E.D.N.Y. 2011) (citing cases on both sides); *see also Enriquez v. Countrywide Home Loans, FSB*, 814 F. Supp. 2d 1042 (D. Hawaiʻi, 2011) (finding that Countrywide Home Loans, FSB was not a credit-repair organization under CROA); *Dodds v. BAC Home Loans Servicing, LP*, CV. No. 10–00371 DAE KSC, 2011 WL 1483971, at *1 n.2 (D. Hawaiʻi Apr. 19, 2011) (finding same as to a successor-in-interest to the instant defendant). The Kahramans have not alleged that Countrywide offered them any other form of credit repair that might entitle them to relief. *See Nixon v. Alan Vester Auto Grp., Inc.*, No. 1:07CV839, 2008 WL 4544369, at *7 (M.D.N.C. Oct. 8, 2008) (dismissing CROA claims against car financers where plaintiff "[did] not allege that any of the Defendants were credit repair organizations or held themselves out as offering any form of credit repair services.").

14

But even if § 1679b applied to Countrywide, the Kahramans' claim would make Countrywide liable for misrepresenting the Kahramans' income *to itself* as part of the lending process. *Hayrioglu* rejected this same "strained reading," finding that it is not "a sensible understanding of the statutory language or of the Congress's intent." 794 F. Supp. 2d at 415 (citing *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 899 (N.D. Ill. 2009)). This Court agrees that overstating an applicant's income as part of an internal loan approval process does not alone constitute a violation of 15 U.S.C. § 1679b(a)(1). Accordingly, the Kahramans have not stated a claim to relief under CROA.

Moreover, even if Countrywide's misrepresentation were actionable under CROA, the Kahramans have not shown that it was the cause of their injury. Countrywide's purported misstatement of Servet Kahraman's income improved, rather than impaired, the Kahramans' access to credit that they were actively seeking. After the Kahramans were approved for the refinancing loan, they signed a one-page "Truth in Lending Disclosure Statement" that clearly set forth their liability under the refinanced loan: 359 monthly payments of $3,222.71, and a final payment of $3,217.29. (Bjurstrom Dec. Ex. G.) The Kahramans also received and endorsed forms reflecting the allegedly misstated income at closing. (*Id.* Ex. F.) As plaintiffs acknowledge in their Amended Complaint, "nearly all of Mr. Kahraman's $3,583 monthly income went to making the Kahramans' . . . mortgage payment, which left them only Mrs. Kahraman's salary to live on." (*See* Am. Compl. ¶¶ 17–18) Thus, the Kahramans knowingly undertook a credit obligation that they acknowledge would be difficult to afford. The size of the Kahramans monthly payments and the sufficiency of their actual income to meet those payments should have informed plaintiffs well before the economic events of 2008 of the need to seek

additional income, a smaller home, or a different financial arrangement.[8] If two years later the Kahramans experienced the injury they plead—"economic loss and mental anguish, and . . . the prospective loss through foreclosure of the premises that are their home," (Am. Compl. ¶ 46)—they have not offered facts from which to conclude that Countrywide caused their harm by facilitating their efforts to obtain a loan.

For the foregoing reasons, Countrywide's motion for summary judgment as to the Kahramans' CROA claim is granted.

**IV. Plaintiffs' Remaining Claims**

In their two remaining claims, the Kahramans allege that Countrywide violated New York's Deceptive Practices Act (the "DPA"), and that Countrywide fraudulently induced them to refinance their home. (Am. Compl. ¶¶ 28–38.)

"In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

In the instant case the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presb'n Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter

---

[8] The Kahramans' signed loan application indicates that their refinancing actually *lowered* their monthly housing expenses by nearly $1800. (Bjurstrom Dec. Ex. F at 2.) While not relied upon for this opinion, this calculation suggests that Countrywide's facilitation of the Kahramans' loan application process, far from causing them injury, might have staved off foreclosure of their home for a few more years.

jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608(WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court."); *see, e.g.*, *Done v. Option One Mortg.*, No. 09–CV–4770 (JFB), 2011 WL 1260820, at *10 (E.D.N.Y. Mar. 30, 2011) (dismissing mortgagor's TILA claims and other federal claims as time barred, and declining jurisdiction over remaining state law claims).

## CONCLUSION

For the above reasons, Countrywide's motion for summary judgment (Doc. No. 29) is granted as to plaintiffs' federal law claims, which are dismissed with prejudice. Plaintiffs' remaining state law claims are dismissed without prejudice.[9]

Upon entry of judgment, the Clerk shall close the file in this court.

SO ORDERED.

Dated: Brooklyn, New York
      August 8, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge

---

[9] Plaintiffs' request to file a Second Amended Complaint (Doc. No. 28) in order to amplify their state law claims is moot.